UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Stella Khaimova, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>    - against -<br><br>Anheuser-Busch, LLC,<br><br>      Defendant | 1:21-cv-05268<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Anheuser-Busch, LLC ("defendant") manufactures, labels, markets, and sells "Platinum Hard Seltzer – Made With Agave," under the Bud Light brand ("Product"), in various fruit flavors.

 

2. The relevant front of the box representations include "Platinum Seltzer," "Made With Agave," "8% ALC/VOL," and a glass of clear liquid surrounded by various fruits.



3. In digital and print media, the Product is further advertised as "Made For The Night."



4. The representations are misleading because they give consumers the impression the Product contains a more valued type of agave ingredients than it does.

**I.     AGAVE**

5.   Agave is a "perennial succulent often mistaken for cactus."

6.   The Aztecs considered agave sacred and used all parts of this plant.

7.   Its uses included food and shelter, "its flesh eaten and leaves dried and woven into clothing, floor mats, and thatch roofs."

8.   Before it was distilled into tequila, "it was fermented into a kind of beer imbibed during religious ceremonies as a way to communicate with the gods."

9.   Agave refers to the family *Asparagaceae*, native to arid and semiarid regions of the Americas, particularly Mexico.



10.  The genus contains a number of economically important species, especially those required for the production of mezcal liquors.

11.  Most producers are small family operations distilling the agave that grows wild in their part of the country and distributing it to their local community.

12.  Distillation of agave dates to the 17th century.

3

13. Tequila is traditionally made by steaming agave in brick ovens and crushing it using a mechanical shredder.

14. The juices are then collected and fermented naturally in open wooden tanks, then distilled twice in copper pot stills.

15. All 100% blue agave tequila must be made from the *A. tequilana* "Weber's Blue" agave plant, to rigorous specifications and only in certain Mexican states

16. The price of blue Weber agave fluctuates dramatically.

17. It is costly and time-consuming to farm, taking seven years to reach maturity.

18. Agave crops can also be negatively impacted by bad weather, which has increased due to global warming.

19. Agave-specific diseases can also decimate an agave crop.

20. In 2001, the Mexican government and European Union agreed upon the classification of tequila and its categories.

## II. TEQUILA PREMIUMIZATION

21. Numerous tequila brands started or associated with celebrities have been a big factor in the growth of tequila.

22. Their vast social media networks allow them to be real-time influencers for the brand, while allowing them to interact with their consumers and followers.

23. US consumption of tequila has risen by more than 30% between 2015 and 2020, with premium-and-above products up by over 60%.

24. Most brands have focused on premiumization, through age statements, a second filtration through the cristalino process, single barrel, bourbon barrel aging, 100% organic offerings, single-estate products, and 110-proof offerings.

**III. POPULARITY OF TEQUILA INCREASES DEMAND FOR ALL THINGS AGAVE**

25. The increase in awareness and knowledge of tequila has led to a greater demand for other agave spirits.

26. Agave spirits are the fastest growing category in the US, and increased c. 20% in 2020, twice as much as bourbon, the second highest.

27. In 2020, the volume of agave spirits surpassed the rum and bourbon (whiskey) categories.

28. Agave spirits are the third largest spirits category in the US in terms of sales, behind vodka and whisky.

29. Demand for agave spirits cuts across age groups and genders, due to several factors.

30. First, it is overtly plant-based, and seen as being a "clean" and "light" spirit, creating a "better for you" perception among consumers.

31. Second, agave spirits appeal to consumers because of their Mexican origin, seen as "exotic" by consumers.

32. Third, the absence of industrial farming methods taps into consumer desire for authenticity, as seen in the image below of Mexican farmers harvesting their agave crops.



33. Fourth, the association of tequila with many celebrities and "influencers" has spilled over into other agave spirits.

## IV. STATE AND FEDERAL REGULATIONS REQUIRE FRONT LABEL TO QUALIFY "MADE WITH AGAVE" STATEMENT

34. Illinois has incorporated all federal labeling regulations for spirits which are adopted by The Alcohol and Tobacco Tax and Trade Bureau ("TTB").

35. Federal regulations define "Agave spirits" as "distilled from a fermented mash, of which at least 51 percent is derived from plant species in the genus Agave and up to 49 percent is derived from other sugars." 27 C.F.R. § 5.22(g) ("Class 7; Agave Spirits.").

36. Agave spirits "must be distilled at less than 95 percent alcohol by volume (190° proof) and bottled at or above 40 percent alcohol by volume (80° proof)."

37. Agave spirits "may be stored in wood barrels" and "contain added flavoring or coloring materials as authorized by § 5.23."

38. Only agave spirits that "meet the standard of identity for "Tequila" or "Mezcal" may be designated as "agave spirits" or as "Tequila" or "Mezcal" as applicable."

39. Federal (and thus, state) regulations for spirits prohibit "Any statement that is false or untrue in any particular, or that, irrespective of falsity, directly, or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression." 27 C.F.R. § 5.42(a)(1)

40. The Illinois Consumer Fraud and Deceptive Business Practices Act provides protection for consumers purchasing items like the Product, and states:

6

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

815 ILCS 505/2.

41. Whether a product is made with agave spirits is basic front label information consumers rely on when making quick decisions when buying alcoholic beverages.

42. The Product lacks any agave spirits, and instead, uses "Agave Syrup," a sweetener derived from the Agave plant, as shown in the fine print ingredient list on the back of the Product.



**INGREDIENTS:** Water, Cold-Fermented Cane Sugar, Natural Flavors, Agave Syrup, Citric Acid, Malted Rice.

43. Reasonable consumers are misled by the statement, "Made With Agave."

44. The other representations, including "Platinum," "Made For the Night," and "8% ALC/VOL," in conjunction with "Made With Agave," furthers the consumer belief the Product contains agave spirits, for several reasons.

45. First, platinum refers to a type of tequila.

46. Second, platinum is defined as a valuable silvery-grey metal.

7

47. Based on the known value of all things platinum, many brands designate high-valued customers as having attained "Platinum" status, based on accumulation of "points," entitling them to membership perks.

48. Third, in the context of nightlife, platinum is a term that is accompanied by status and importance.

49. Fourth, "Made For the Night," tells consumers that the Product is not a typical hard seltzer made from cane-sugar.

50. Consumers of alcohol typically associate consumption of hard liquors with a night out.

51. Fifth, the emphasis in large print of the "8% ALC/VOL," tells consumers the Product has a relatively high alcohol content, which they will link to the expected presence of agave spirits.

52. Sixth, the picture on the front of the box shows the Product poured into a glass.

53. This is significant, as consumers are accustomed to drinking hard seltzer from cans.

54. In contrast, spirits are typically consumed in glasses, whether at a nightclub or home.

55. Seventh, the liquid in the glass on the front label is clear, the color of agave spirits.

56. Agave syrup, also known as maguey syrup or agave nectar, is a sweetener, commercially produced from several species of agave, including *Agave tequilana* (blue agave).

57. Blue-agave syrup contains 56% fructose as a sugar, providing sweetening properties.

58. Numerous spirit-industry publications have emphasized that the popularity of agave spirits has resulted in its addition to ready-to-drink (RTD) products.

59. For instance, varieties of "Ranch Water," a West Texas alcoholic beverage, including the product made by the Texas Ranch Water Company, contain alcohol from agave.

60. In the context of an alcoholic beverage with the representations identified here,

8

consumers will expect "Made With Agave" to mean the Product contains agave spirits.

61. Consumers buying alcoholic beverages are more aware of agave spirits than agave sweetener and are not looking for alternatives to sugar.

## V. CONCLUSION

62. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and other comparable products or alternatives.

63. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

64. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

65. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

66. The Product is sold for a price premium compared to other similar products, no less than $9.99 for a six-pack of 12 oz cans, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

### Jurisdiction and Venue

67. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

68. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

69. Plaintiff Stella Khaimova is a citizen of Illinois.

70. Defendant Anheuser-Busch, LLC is a Missouri limited liability company with a

9

principal place of business in Saint Louis, Saint Louis City County, Missouri and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

71. The sole member of Anheuser-Busch, LLC is Anheuser-Busch Companies, LLC.

72. The sole member of Anheuser-Busch Companies, LLC, is Anheuser-Busch InBev Worldwide, Inc.

73. Anheuser-Busch InBev Worldwide, Inc., is a Delaware corporation with a principal place of business in St. Louis, Missouri.

74. Plaintiff and defendant are citizens of different states.

75. Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

76. Venue is in the Eastern Division because plaintiff resides in Lake County, which is where the events giving rise to the present claims occurred.

## Parties

77. Plaintiff Stella Khaimova is a citizen of Vernon Hills, Lake County, Illinois.

78. Defendant Anheuser-Busch, LLC, is a Missouri limited liability company with a principal place of business in Saint Louis, Missouri, Saint Louis City County.

79. Defendant is part of the largest alcoholic beverage company in the world, Anheuser-Busch InBev.

80. The Bud Light brand has been one of the most well-known in the world for decades.

81. Defendant has sought to capitalize on consumer demand for hard seltzers and agave spirits.

82. The Product is sold at thousands of retail locations – grocery stores, drug stores, big box stores, convenience stores, etc. – and online.

83. The Product is sold in packs of twelve.

84. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at stores including Target, 313 E Townline Rd, Vernon Hills, IL 60061, in July 2021, among other times.

85. Plaintiff bought the Product because she expected it would contain agave spirits.

86. Plaintiff did not expect it to contain agave syrup, because the Product was not labeled, "Agave Sweetened Platinum Hard Seltzer."

87. Plaintiff bought the Product at or exceeding the above-referenced price.

88. Plaintiff relied on the representations identified here.

89. Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

90. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

91. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

92. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

## Class Allegations

93. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class:** All persons in the

    States of Iowa and Arkansas who purchased the Product during the statutes of limitations for each cause of action alleged.[1]

94. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

95. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

96. Plaintiff is an adequate representative because her interests do not conflict with other members.

97. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

98. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

99. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

100. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

101. Plaintiff incorporates by reference all preceding paragraphs.

102. Plaintiff and class members desired to purchase a product that contained agave spirits, not agave sweetener.

103. Defendant's false and deceptive representations and omissions are material in that

---

[1] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: Iowa (Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 et seq.); Arkansas (Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et. seq.).

they are likely to influence consumer purchasing decisions.

104. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

105. Plaintiff relied on the representations.

106. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Violation of State Consumer Fraud Acts

### (On Behalf of the Consumer Fraud Multi-State Class)

107. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

108. Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

109. As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

110. In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

111. The Product was manufactured, labeled, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained agave spirits, not agave sweetener.

112. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

113. This duty is based on Defendant's outsized role in the market for this type of Product.

114. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

115. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

116. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

117. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

118. Defendant had a duty to truthfully represent the Product, which it breached.

119. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as the Bud Light brand has consumer recognition as a trusted source of alcoholic beverages.

120. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a nationally recognized and trusted brand.

121. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

122. Plaintiff and class members would not have purchased the Product or paid as much

if the true facts had been known, suffering damages.

## Fraud

123. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained agave spirits, not agave sweetener

124. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

125. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: October 5, 2021

          Respectfully submitted,

          Sheehan & Associates, P.C.
          /s/Spencer Sheehan

          60 Cuttermill Rd Ste 409
          Great Neck NY 11021
          Tel: (516) 268-7080
          spencer@spencersheehan.com